No. 106,132

STATE OF KANSAS, *Appellee*, v. RASMUS R. EDDY, *Appellant*.

(321 P.3d 12)

Opinion filed March 21, 2014.

*Meryl Carver-Allmond*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Christina M. Trocheck*, assistant county attorney, argued the cause, and *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Rasmus R. Eddy directly appeals his jury convictions for multiple counts of serious sex offenses perpetrated against A.E., his 4-year-old granddaughter. Eddy raises two arguments on appeal: (1) The State presented insufficient evidence to prove that he committed rape by the alternative means of penetrating the victim with an object, and (2) the district court erroneously denied his request to have a psychological evaluation performed on the victim. This court has direct jurisdiction pursuant to K.S.A. 22-3601(b)(1), prior to its 2011 amendments. We affirm.

## FACTUAL AND PROCEDURAL OVERVIEW

The incidents underlying the charges against Eddy occurred in the spring of 2009, while A.E. was staying at Eddy's house for a few days at Eddy's request. The child related to her mother and other relatives that she had seen naked adults on Eddy's computer; that Eddy had touched her in the vaginal area with his finger; and that Eddy had licked her vagina. Eddy admitted to the police that he had allowed the child to view pornography on his computer. He explained the touching by saying that he had rubbed baby oil on a sore that was located on the inside of the child's labia. Eddy explained the licking by describing how the child, while naked, playfully climbed over his head a number of times, causing his face to contact her vaginal area. He also said that the child insisted that he kiss her "owie," *i.e.*, her labial sore, and that he had pretended to do so by placing his hand over her vagina and kissing the inside of her thigh or the back of his own hand. Eddy also told the police that the child had grabbed his penis unexpectedly on two occasions during her visit.

During closing argument, the prosecutor explained the charges against Eddy and related the facts supporting each charge. Count I charged rape based upon Eddy's admittedly putting his finger

inside the child's labia, albeit ostensibly to rub oil on a sore. Count II charged aggravated criminal sodomy based on A.E.'s testimony that Eddy licked her vagina. Count III, promoting obscenity to a minor, was based on Eddy allowing A.E. to view pornography. Count IV, aggravated indecent liberties with a child, was based on Eddy's testimony that he placed his hand over A.E.'s vagina and kissed her inner thigh. Counts V and VI each charged aggravated indecent liberties with a child and were based on Eddy's testimony that A.E. grabbed his penis on two different occasions, as well as his having held his penis while showing it to A.E. Finally, Counts VII–XI were aggravated criminal sodomy charges based on Eddy's testimony that "as many as five times he let [A.E.] slide down his face while she was naked, and that she'd come in contact with his nose and his mouth. That's oral contact."

The jury acquitted Eddy on one of the aggravated criminal sodomy charges, Count VIII, but convicted him on all of the other counts.

Eddy filed a posttrial motion for acquittal, arguing, *inter alia*, that the five convictions for aggravated criminal sodomy that were based on the single, unitary incident where A.E. repeatedly slid down Eddy's face were multiplicitous. The district court denied the motion, and Eddy has not asserted multiplicity in this appeal.

The sentencing court granted Eddy's motion to impose a sentencing guidelines grid sentence, pursuant to K.S.A. 21-4643(d), and the district court ultimately imposed a controlling prison sentence of 310 months, or 25 years and 10 months. Eddy timely appealed.

## ALTERNATIVE MEANS

On the rape count, the court instructed the jury that one of the claims the State had to prove was "[t]hat the defendant had sexual intercourse with [A.E.]." Then the jury instructions set forth the following definition: "Sexual intercourse means any penetration of the female sex organ by *a finger or any object*. Any penetration, however slight, is sufficient to constitute sexual intercourse." (Emphasis added.)

Eddy contends that the definition of sexual intercourse given to the jury created alternative means by which it could have found that the rape occurred, *i.e.*, by penetrating A.E.'s sex organ with a finger or by penetrating A.E.'s sex organ with an object. Therefore, to ensure jury unanimity, the State was required to present the jury with sufficient evidence to support a conviction under both alternative means or the conviction must be reversed. See *State v. Wright*, 290 Kan. 194, 202-03, 224 P.3d 1159 (2010) (in alternative means case, jury need not be unanimous as to which means defendant utilized but there must be substantial competent evidence of each instructed means). Eddy argues that the State presented no evidence that he penetrated the child with an object, apparently presuming that a finger is not also an object within the meaning of the instructions.

*Standard of Review*

"Issues of statutory interpretation and construction, including issues of whether a statute creates alternative means, raise questions of law reviewable de novo on appeal." *State v. Brown*, 295 Kan. 181, Syl. 6, 284 P.3d 977 (2012). An alternative means challenge can be raised for the first time on appeal because it implicates the sufficiency of the evidence to support the conviction. See *State v. Wells*, 297 Kan. 741, 756-57, 305 P.3d 568 (2013).

*Analysis*

Subsequent to Eddy's trial, this court resolved the question of whether the definition of sexual intercourse created alternative means of committing rape. In *State v. Britt*, 295 Kan. 1018, 1027, 287 P.3d 905 (2012), this court reasoned that the gravamen of the prohibited act of rape was penetration and that the listing of body parts and "any object" merely described factual circumstances by which the element of penetration could be proved. Because the instruction did not create an alternative means circumstance, evidence establishing that Britt penetrated the victim's vagina with his penis was sufficient to support his rape conviction, notwithstanding the absence of any evidence that he penetrated the victim with a finger or another object. 295 Kan. at 1026-27; see *State v.*

*Weber*, 297 Kan. 805, 816-17, 304 P.3d 1262 (2013); *State v. Miller*, 297 Kan. 516, 518, 304 P.3d 1221 (2013).

Eddy's brief was submitted prior to our decision in *Britt*. At oral argument, the defense did not proffer any compelling reason that we should reverse *Britt's* holding that the definition of sexual intercourse does not make rape an alternative means crime. We stand by that ruling, which resolves the issue against Eddy. There was sufficient evidence that Eddy penetrated the child's labia with his finger, which would support the sexual intercourse element of the crime of rape.

### PSYCHOLOGICAL EVALUATION OF THE VICTIM

For his other issue, Eddy contends that the district court erred in denying his request to have A.E. undergo a psychological evaluation to determine the admissibility of her testimony. He argues that an examination was warranted because: (1) A.E. was an impressionable 4-year-old girl who was subject to her mother's control for a full month before giving a statement to law enforcement officers, and (2) A.E.'s allegations were uncorroborated. We do not find Eddy's proffered reasons to evaluate A.E. to be compelling.

### *Standard of Review*

This court applies an abuse of discretion standard when reviewing a district court's decision on a motion for a psychological evaluation of a complaining witness. *State v. Stafford*, 296 Kan. 25, 39, 290 P.3d 562 (2012).

"Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based." *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012) (citing *State v. Gonzalez*, 290 Kan. 747, 755-56, 234 P.3d 1 [2010]).

The party asserting an abuse of discretion has the burden of persuasion. *State v. Woodward*, 288 Kan. 297, 299, 202 P.3d 15 (2009).

*Analysis*

Appellate courts are typically loathe to find an abuse of discretion when a district court refuses to order a psychological examination of a young sex abuse victim, unless the circumstances are extraordinary. "In general, a defendant is entitled to a psychological examination of a complaining witness in a sex crime if *compelling* circumstances justify such an examination." (Emphasis added.) *Stafford*, 296 Kan. at 40.

To assess the existence of compelling circumstances, a court should examine the totality of the circumstances, and, at least since our decision in *State v. Gregg*, 226 Kan. 481, 602 P.2d 85 (1979), courts have applied certain factors. Recently, we considered the following nonexclusive list of factors: (1) whether there is corroborating evidence of the complaining witness' version of the facts, (2) whether the complaining witness demonstrates mental instability, (3) whether the complaining witness demonstrates a lack of veracity, (4) whether the complaining witness has made similar charges against others that were proven to be false, (5) whether the defendant's motion for an evaluation appears to be a fishing expedition, and (6) whether the complaining witness provides an unusual response when questioned about his or her understanding of what it means to tell the truth. *State v. Berriozabal*, 291 Kan. 568, 581, 243 P.3d 352 (2010).

With respect to the first factor, Eddy contends that there was no evidence to corroborate A.E.'s allegations. Granted, the State did not present any physical or medical evidence to corroborate the charges. But Eddy's own statements, both to law enforcement officers and at trial, provided plenty of corroboration for A.E.'s description of events. He admitted touching the inside of A.E.'s labia; he admitted contact between his mouth and A.E.'s genitalia; and he admitted showing the child pornography on his computer. Indeed, some of the convictions were based solely upon Eddy's own statements, such as the counts related to A.E. touching or seeing Eddy's penis, because the child never told anyone that she saw or touched her grandpa's penis. While Eddy put his own spin on why the alleged acts occurred, he nevertheless corroborated

that they did occur. A psychological examination of the victim would have added nothing to the question of the defendant's specific intent.

With respect to the remaining factors, Eddy did not present any evidence that A.E. displayed any mental instability, demonstrated any lack of veracity, made any similar charges against others that were proven to be false, or indicated an inability to understand what it means to tell the truth. To the contrary, the motion for an evaluation in this case appears to be a prime example of a fishing expedition.

Eddy tries to suggest that A.E.'s mother was involved in "heated custody proceedings" with A.E.'s father, which provided the incentive for the mother to plant permanent false memories in A.E.'s mind in order to frame A.E.'s grandfather for sex abuse, and that the 4-week delay in obtaining A.E.'s law enforcement interview provided mother with the opportunity to effect her scheme. There are a number of disconnects in that line of reasoning.

First, the record does not support the heated custody dispute claim. Rather, there was some testimony that A.E.'s mother and father were quarreling because mother wanted father to take A.E. for awhile, but he was financially unable to do so. Moreover, Eddy does not explain why framing him for sex abuse would have provided A.E.'s mother with any advantage in her alleged dispute with her ex-husband.

Most importantly, however, on May 1, 2009, A.E. told the same thing to her mother, her grandmother, her great aunt, and the sexual assault nurse examiner. Then, 4 weeks later, on May 28, 2009, she repeated the same allegations to the law enforcement officer. The only inconsistency to which Eddy can point is that in the later interview, A.E. used the term "nasty" for the first time. Again, Eddy fails to explain the significance of that distinction. Even if A.E.'s mother planted the notion that the sex abuse was "nasty," it does not render suspect the child's consistent statements of what Eddy did to her. Certainly, it is not a compelling circumstance that would justify a psychological examination.

In sum, Eddy fails to establish any valid reason that would support a finding of compelling circumstances to warrant a psycholog-

ical examination of the sex abuse victim in this case. As such, the district court's denial of the evaluation motion cannot be deemed an abuse of discretion. The ruling is affirmed.

Affirmed.